**BOWIE v. SORRELL et al.**
**No. 6670.**

United States Court of Appeals
Fourth Circuit.
Argued Nov. 17, 1953.
Decided Dec. 26, 1953.

William J. Gibson and Bascom S. Pribble, Jr., Fredericksburg, Va., for appellant.

C. O'Conor Goolrick, Fredericksburg, Va. (Caskie, Frost, Davidson & Watts, Lynchburg, Va., and Goolrick & Ashby, Fredericksburg, Va., on the brief), for appellees.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

This civil action to recover damages for personal injuries alleged to have been suffered by plaintiff, Bowie, in an automobile accident, was instituted in the Circuit Court of Campbell County, Virginia, and was duly removed to the United States District Court for the Western District of Virginia.

The defendants filed an answer denying liability and asserting that a settlement had been made and that Bowie had executed a release in full for all claims against the defendants. Bowie replied to the answer, admitting that he executed the release, but claimed that it was obtained by "fraud, undue influence, harrassment and misrepresentations on the part of defendants acting through their agents and servants, who represented to the plaintiff that $5,000.-00 was the maximum he could expect for his injuries; that in the event of his death, his family would get nothing; that it was to his interest to sign without benefit of consultation with friends or attorneys; that after signing the alleged release, when too ill to understand the extent and without knowledge of his injuries, he was further hospitalized in the Walter Reed Hospital until October 31, 1952."

Defendants moved the court for a separate trial on the issue of the validity of the release, and asked that on this issue a jury trial be denied upon the ground that the matter of determining the validity of an executed release was properly cognizable in equity, and therefore plaintiff was not entitled to a jury trial on this issue. A pretrial conference was held, and argument of counsel was heard on the procedural questions presented, the plaintiff strenuously insisting that he be awarded a single jury trial for the determination of all the issues in this case.

On the question of whether a separate trial upon the issue of the validity of the release should be had, and, whether upon such separate trial there should be a jury, the District Judge stated in his opinion [113 F.Supp. 375]:

"As the release had been obtained by the adjuster for the insurance company covering the public liability of the defendants, it seemed obvious that, if all issues were tried at one time with a jury, the fact of the defendants' insurance coverage would inevitably be made known to the jury. In Virginia, it has been consistently held that evidence as to insurance coverage is inadmissible and prejudicial to a defendant and the admission of such testimony or argument of counsel disclosing insurance coverage is reversible error. [P.] Lorillard [Co.] v. Clay, 127 Va. 734, 104 S.E. 384; Lanham v. Bond, 157 Va. 167, 160 S.E. 89; Worrell v. Worrell, 174 Va. 11, 4 S.E.2d 343; Bloxom v. McCoy, 178 Va. 343, 17 S.E.2d 401. Therefore, it seemed clear to me that defendants were entitled to a separate

trial on the issue of the validity of the release, and it was so ordered.

"Upon the question of whether, notwithstanding defendants' opposition, the plaintiff was entitled to a jury trial on this issue, the situation seemed to be that the trial of this issue was clearly in the nature of an equitable action to set aside and declare invalid an executed instrument. Chesapeake & Ohio Railway Co. v. Mosby, 93 Va. 93, 24 S. E. 916. As the issue would be one 'not triable of right by a jury', it seemed to me that I could not properly order a jury trial. It is true that I might have impaneled an advisory jury under the provisions of Rule 39(c), Fed.Rules Civ.Proc. 28 U.S.C.A., but as neither party had requested an advisory jury and I was of the opinion that an advisory jury would not be helpful as the duty of the final determination of the facts would rest upon the court, I denied plaintiff's demand for a jury trial, and set the case for trial upon the issue of the validity of the release by the court without a jury."

After an extended hearing the District Judge held: "It is my conclusion that the release executed by plaintiff on January 29, 1952, was voidable when executed, by reason of the mental incapacity of the plaintiff and the constructive fraud of defendant's agent Reid." The District Judge held, further, that "plaintiff by his subsequent conduct ratified the settlement and release". Plaintiff's action was, accordingly, dismissed, 113 F.Supp. 373.

We think the District Judge acted altogether properly in granting a separate trial upon the issue of the validity of the release. Under Rule 42(b) of the Federal Rules of Civil Procedure, the granting of separate trials is within the sound discretion of the trial judge. There was no abuse of this discretion in the instant case. See, Bedser v. Horton Motor Lines, Inc., 122 F.2d 406, 407,

opinion by Circuit Judge Northcott, speaking for our Court.

We must hold, though, that plaintiff, Bowie, was entitled to a jury trial on the issue of the validity of the release. We are not impressed by the statement in the brief for defendants: "We do not see how Bowie was prejudiced in any way by a failure to submit the issue of the validity of the release to a jury." The right to a jury trial in a federal court, in a proper case, is guaranteed by the 7th Amendment to the United States Constitution and has been sedulously guarded by a long line of judicial decisions. See, for example, Jacob v. City of New York, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166; Callen v. Pennsylvania Railway Co., 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242. See, also, Rule 38, Federal Rules of Civil Procedure. In one place in his opinion, the District Judge stated: "In certain particulars, the evidence in this case is conflicting." At another place, he said: "The matter of the mental capacity of the plaintiff at the time of the execution of the release seems to me to be a very close question." The case must, therefore, be remanded to the District Court with instructions to grant a jury trial on the question of the validity of the release.

From the brief for defendants, we quote:

"There are a number of cases in Virginia where the validity of releases has been tried with the tort actions by a court and jury, but in none of these cases has the question of a proper forum for passing on the validity of the release been raised. Flowers v. Virginian R. Co., 135 Va. 367, 116 S.E. 672; Northwestern Nat. Ins. Co. v. Cohen, 138 Va. 177, 121 S.E. 507; Stallard v. Atlantic Greyhound Lines, 169 Va. 223, 192 S.E. 800; Provident Life [& Accident] Ins. Co. v. Walker, 190 Va. 1016, 59 S.E.2d 126."

Both the District Judge and defendants rely upon the case of Chesapeake &

Ohio Railway Co. v. Mosby, 93 Va. 93, 24 S.E. 916. In that case, the plaintiff (injured conductor) "instituted this suit in chancery to set aside a release of all claim for damages suffered by him in that accident, on the ground that at the time of executing said release he was mentally incompetent, and that the defendant company took advantage of his incapacity to procure the release." Clearly, that was a chancery proceeding seeking an equitable remedy. Here, we have a quite different situation: a common-law suit for damages, a release pleaded as a defense by defendants, and an attack by the plaintiff on the validity of the release, based upon the alleged fraud of the agent of the defendants in procuring the release.

Further, any comfort the defendants may find in the Mosby case, is completely taken away by subsequent decisions of the Virginia Supreme Court of Appeals. Thus Kelly, President, stated in Flowers v. Virginian Railway Co., 135 Va. 367, 116 S.E. 672:

> "The case of C[hesapeake] & O[hio] R[ailway] Co. v. Mosby, 93 Va. 93, 24 S.E. 916, cited by counsel for defendant, was a suit in chancery, and the decision was rendered by the chancellor without the intervention of a jury. In the instant case the question (the validity of a release attacked or the score of fraud) was properly referable to the jury". 135 Va. at page 382, 116 S.E. at page 677.

And, see, also, Ferries Co. v. Brown, 121 Va. 13, 92 S.E. 813; Stallard v. Atlantic Greyhound Lines, 169 Va. 223, 192 S.E. 800; Provident Life & Accident Insurance Co. v. Walker, 190 Va. 1016, 59 S.E.2d 126.

The decision in Atlantic Greyhound Lines v. Metz, 4 Cir., 70 F.2d 166, upon which the defendants rely, is not in point here, as in that case a jury trial was actually held. Ross v. Service Lines, Inc., D.C., 31 F.Supp. 871, is directly in point as supporting the contention of defendants, District Judge Lindley, though, made it quite clear in that case:

"I consider myself bound to follow the reasoning of the Supreme Court of Illinois". 31 F.Supp. at page 873.

■ We think that our problem must be solved by federal law, not by the law of the State of Virginia, though we believe that the solution to the problem before us would be the same, whether the State law or the federal law be applied.

In the leading case of Enelow v. New York Life Insurance Co., 293 U.S. 379, 384–385, 55 S.Ct. 310, 312, 79 L.Ed. 440, Chief Justice Hughes stated:

> "The instant case is not one in which there is resort to equity for cancellation of the policy during the life of the insured and no opportunity exists to contest liability at law. Nor is it a case where, although death may have occurred, action has not been brought to recover upon the policy, and equitable relief is sought to protect the insurer against loss of its defense by the expiration of the period after which the policy by its terms is to become incontestable. Here, on the death of the insured, an action at law was brought on the policy, and the defendant had opportunity in that action at law, and before the policy by its terms became incontestable, to contest its liability and accordingly filed its affidavit of defense. That defense was solely that the defendant had been induced to issue the policy by false answers in the application which were alleged to have been made by the applicant 'with knowledge of their falsity and fraudulently' in order to obtain the insurance. The affidavit of defense showed nothing whatever as a further ground for equitable relief, and the respondent is necessarily confined to the case it made. In such a case, the defense of fraud is completely available in the action at law, and a bill in equity would not lie to stay proceedings in that action in order to have the defense heard and determined in equity. Phoenix Mut.

Life Insurance Co. v. Bailey, 13 Wall. 616, 623, 20 L.Ed. 501; New York Life Insurance Co. v. Bangs, 103 U.S. 780, 782, 26 L.Ed. 608; Cable v. United States Life Ins. Co., 191 U.S. 288, 305, 24 S.Ct. 74, 48 L.Ed. 188; American Mills Co. v. American Surety Co., 260 U.S. 360, 363, 43 S.Ct. 149, 67 L.Ed. 306; New York Life Ins. Co. v. Marshall, 23 F.2d 225; New York Life Ins. Co. v. Miller [8 Cir., 73 F.2d 350, 97 A.L.R. 562], supra. Respondent was in no better position under section 274b."

This seems to us to be controlling.

The judgment of the District Court is reversed, and the case is remanded to that Court with instructions to grant a jury trial on the issue of the validity of the release.

Reversed and remanded.