## Staunton

**Evelyn Louise Harvey v. Ann Hadden Robey.**

September 4, 1970.

Record No. 7145.

Present, All the Justices.

*John R. Alford,* for plaintiff in error.

*Edward S. Graves; Paul H. Coffey, Jr.* (*Edmunds, Baldwin and Graves,* on brief), for defendant in error.

Harman, J., delivered the opinion of the court.

The assignment of error that is dispositive of this appeal is whether the trial court erred in failing to strike plaintiff's evidence and enter summary judgment for the defendant, Evelyn Louise Harvey, on a special plea of accord, satisfaction and release.

Ann Hadden Robey, the plaintiff, was injured as a result of an automobile accident which occurred on January 28, 1966, on State Route 297 in Campbell County. She was a passenger in a car driven by her husband when it was involved in a collision with a car driven by defendant.

Plaintiff lost consciousness as a result of the accident and received numerous contusions, bruises and abrasions of her chest, arms and knees. She also received a hematoma approximately one inch in

diameter on the upper occipital area of her head. She was hospitalized for a period of six days at Lynchburg General Hospital where she was treated by the members of its staff. She was then allowed to return to her home at Vinton, Virginia, where she was under the care of her family physician.

The accident was investigated by Ronald W. Willis, a claims adjuster for the defendant's insurance carrier. He concluded from his investigation that the accident was the result of negligence on the part of defendant.

Willis interviewed plaintiff and her husband on three or four occasions. On February 9, 1966, a settlement was reached with the plaintiff's husband, Luther C. Robey, for his property damage and the loss of use of his car and a release was executed by him upon payment of repair bills for his car and the cost of a rental car.

Willis obtained a medical report from the plaintiff's family physician. Discussions were held between Willis and plaintiff and her husband. On February 25, 1966, a compromise settlement was reached and the plaintiff and her husband executed a release of all claims.[1] The amount agreed upon represented the medical bills which plaintiff had incurred to that date, amounting to $524.35, plus the sum of $1,000 for her personal injuries and to cover possible future medical expenses. At the time of the execution of the release, plaintiff's family physician indicated that she had not fully recovered from her injuries and would continue to be disabled for approximately one month from the date of his report, February 24, 1966. He also indicated he anticipated no permanent disability as a result of her injuries.

Subsequently plaintiff suffered a complete loss of sight in her right eye and a partial loss of hearing in her right ear.

Action was instituted against defendant in August, 1967, by a motion for judgment asking damages in the amount of $50,000 for injuries sustained by the plaintiff as a result of the accident. Defendant filed a special plea of accord, satisfaction and release. The court directed a separate trial on this plea. We are only concerned with the evidence taken in connection with this hearing.

Plaintiff's testimony discloses that from the date of the accident to the time that the release was executed she suffered from a severe headache, nausea, dizziness and blurred vision. The headache, which she described as almost continuous, ". . . would circle through and

---

[1] See next page.

# 1 RELEASE OF ALL CLAIMS

FOR AND IN CONSIDERATION OF the payment to me/us of the sum of ($ 1,524.35 .................)
...................................................................... Dollars,
and other good and valuable consideration, I/we, being of lawful age, have released and discharged, and by these
presents do for myself/ourselves, my/our heirs, executors, administrators and assigns, release, acquit and forever
discharge ............................................................................

and any and all other persons, firms and corporations, whether herein named or referred to or not, of and from any and
all actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, and all
consequential damage on account of, or in any way growing out of, any and all known and unknown personal injuries
and death and property damage resulting or to result from accident that occurred on or about the ..........................
day of ............, 19......., at or near ............................................................................

I/we hereby declare and represent that the injuries sustained may be permanent and progressive and that
recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and
agreed that I/we rely wholly upon my/our own judgment, belief and knowledge of the nature, extent and duration
of said injuries, and that I/we have not been influenced to any extent whatever in making this release by any
representations or statements regarding said injuries, or regarding any other matters, made by the persons, firms
or corporations who are hereby released, or by any person or persons representing him or them, or by any physician
or surgeon by him or them employed.

I/we understand that this settlement is the compromise of a doubtful and disputed claim, and that the payment
is not to be construed as an admission of liability on the part of the persons, firms and corporations hereby re-
leased by whom liability is expressly denied.

It is agreed that distribution of the above sum shall be made as follows:...........................................
.............................................................................................................................
.............................................................................................................................

This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.

I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our own free act.

WITNESS.................hand and seal this......25th......day of ......September............. , 19 ...66.....

IN THE PRESENCE OF

Name.........................................)
Address.....................................)

_____ (SEAL)

_____ (SEAL)

CAUTION! READ BEFORE SIGNING

Name.........................................)
Address.....................................)

just make a line down the back of my head, starting around the (right) eye."

Dr. John W. Yost, plaintiff's family physician, saw her on February 3, 1966, after her release from the hospital. He described her main complaint as a "headache and generalized soreness." His physical examination revealed the hematoma and the numerous contusions, bruises and abrasions mentioned earlier. In his examination of February 3, Dr. Yost performed an ophthalmoscopic examination of plaintiff's eyes which failed to reveal any injury.

His testimony confirms that her complaints of nausea, dizziness and general soreness continued to the date of the release and that he had advised her that, in his opinion, her injuries would probably clear up in about another month and that she should have no permanent disability. She was still under treatment by him at the time the release was signed.

At the conclusion of the plaintiff's evidence and again at the conclusion of all of the evidence, defendant made a motion to strike the evidence and enter summary judgment for the defendant. These motions were overruled and the question of mutual mistake in the execution of the release was submitted to a jury which found in favor of the plaintiff.

A later trial on the merits resulted in a verdict for the plaintiff in the amount of $15,000 and a judgment on this verdict was entered by the trial court.

As we said in *Corbett* v. *Bonney*, 202 Va. 933, 940, 121 S.E.2d 476, 481 (1961): ". . . The fact that the treatment of plaintiff's known injuries has been prolonged does not bring her case within the rule permitting avoidance of the release on the ground of mutual mistake. As was said in *Fix* v. *Craighill*, 160 Va. 742, 755, 169 S.E. 598, 'Mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk are not such mistakes of fact as to entitle either party to relief.' "

The situation now before us is not dissimilar to *Valentine* v. *Jester*, 210 Va. 83, 168 S.E.2d 94 (1969), where we said "The parties also knew that the plaintiff would require future medical treatment. In fact, they bargained with respect thereto by including in the release the medical benefits schedule which provided for the payment of medical expenses up to $2,000.00 if incurred within one year following the accident.

"What was not known when the release was executed was that the plaintiff's doctor would later change his opinion and say that the plaintiff's injuries were permanent. If any mistake was made, it was on the part of the doctor in saying originally that the plaintiff would recover from her injuries 'within a few days to a few weeks.' That was the mere expression of opinion, and a change in that opinion was not sufficient to set aside the release on the ground of mutual mistake of fact." 210 Va., at p. 87, 168 S.E.2d, at pp. 96, 97.

Plaintiff relies on *Ice Company* v. *Lee,* 199 Va. 243, 99 S.E.2d 721 (1957), in which the facts were materially different from the case at bar. In *Ice Company* neither of the parties, at the time the release was executed, thought the releasor had suffered any injury and no compensation was paid for personal injury. It subsequently developed that he had suffered severe injuries of a permanent nature.

At the time she executed the release, plaintiff was fully aware that she had sustained a loss of consciousness in the accident and suffered injuries to her head, arms, chest and knees. By her own testimony she was still under medical care and was still suffering from severe headaches, blurred vision, general soreness, nausea and dizziness, all of which she had made known to her physician.

The agreed consideration for the release not only included medical bills incurred by the plaintiff to the date of the release but also included the additional sum of $1,000 for personal injuries and to cover possible future medical expenses.

Upon the record before us we must conclude that the loss of vision in plaintiff's right eye and the partial loss of hearing in her right ear were the unknown and unexpected consequences of a known injury and do not bring this case within the rule permitting avoidance of a release on the ground of mutual mistake of fact.

For the reasons assigned the judgment below will be reversed and a final judgment will be entered here for the defendant.

*Reversed and final judgment.*